**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| NAUTICAL GIRL, LLC, | * |
| Plaintiff, | * |
| | * |
| v. | *       Case No. ELH-10-3564 |
| | * |
| POLARIS INVESTMENTS, LIMITED | |
| Defendant. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## REPORT AND RECOMMENDATION

The above-referenced case was referred to the undersigned for a report and recommendation on plaintiff's Motion for Reasonable Counsel Fees, Costs, and Expenses (ECF No. 21), pursuant to 28 U.S.C. § 636 and Local Rule 301. (ECF No. 25.) For the reasons discussed herein, I respectfully recommend that plaintiff's motion (ECF No. 21) be GRANTED IN PART and DENIED IN PART and that fees, costs and expenses be awarded as set forth herein.

### I.   BACKGROUND

Plaintiff Nautical Girl, LLC ("plaintiff" or "Nautical Girl") filed this suit for a declaratory judgment and breach of contract against defendant Polaris Investments Limited ("defendant") on December 21, 2010. (ECF No. 1.) Plaintiff is a Florida-based limited liability company owned and operated by Lisa M. Reisman ("Ms. Reisman"). (Id. ¶ 4.) Plaintiff and defendant entered into an Agreement for the purchase of a vessel, "Gone with the Wind," on July 12, 2010. (Id. ¶ 7, Ex. B.) By an addendum to the Agreement executed on August 5 and 6, 2010, the parties agreed to a purchase price of $210,000 (collectively, the "Agreement"). (Id. ¶ 9, Ex. C.)

On August 17, 2010, defendant's sole officer and director, Prieur M. Leary ("Mr. Leary"), executed a Bill of Sale transferring ownership of the vessel from Polaris to Nautical Girl and arranged for proceeds of the sale to be deposited into his bank account. (Id. ¶¶ 12-13, Exs. F, G.) Plaintiff paid defendant $210,000 for the vessel, and on September 9, 2010, the United States Coast Guard ("U.S.C.G.") Documentation Center issued a Certificate of Documentation for Gone with the Wind in the name of Nautical Girl, LLC. (Id. ¶¶ 15-16, Ex. H.)

Ms. Reisman attempted to take possession of the vessel, moored at a marina in Trinidad, on several occasions in September 2010. (Id. ¶ 17.) The marina refused to release the vessel, however, because it was informed by Mr. Leary that Polaris was still the vessel's owner. (Id. ¶ 18.) Subsequent to Ms. Reisman's attempts to take possession of the vessel, Polaris asserted that its claim of ownership was superior to that of Nautical Girl's, pointing to a U.S.C.G. Document issued in January 2010, as well as Panamanian documentation bearing a 2009 date. (Id. ¶¶ 17, 21-22.) The marina refused to release the vessel to Ms. Reisman without a United States court order resolving the disputed claims of ownership. (Id. ¶ 23.)

Plaintiff filed the Complaint in this case on December 21, 2010. (ECF No. 1.) Mr. Leary was served with a copy of the Complaint in this case on December 28, 2010. (ECF No. 5.) Defendant, however, has failed to file an Answer or otherwise defend. Plaintiff filed a Motion for Entry of Default on February 24, 2011, which the Clerk granted on March 2, 2011. (ECF Nos. 9, 12.) Plaintiff's Motion for Default Judgment, filed on July 26, 2011, is also pending before the court. (ECF No. 24.)

On January 13, 2011, plaintiff filed a motion for summary judgment requesting that the court: (1) "issue a declaratory judgment that a contract was entered into and that Nautical Girl is the owner of the vessel pursuant to the binding Agreement" and (2) hold that defendant breached

its contract with plaintiff and order specific performance of the contract or, alternatively, order the return of plaintiff's $210,000 payment. (ECF No. 6.) Defendant failed to file a response to plaintiff's motion for summary judgment.

On February 25, 2011, the court granted plaintiff's unopposed motion for summary judgment. (ECF No. 10.) The court's Order declared Nautical Girl, LLC the owner of Gone with the Wind and ordered that defendant "fully perform its obligations to transfer actual possession of the Vessel to Nautical Girl LLC immediately upon the issuance of this Order." (Id.) Ms. Reisman took possession of the vessel in March 2011. (See ECF No. 13 ("Ms. Reisman . . . is currently with the vessel Gone with the Wind after taking possession of it in Trinidad.").)

The court's Order also directed plaintiff to "provide by affidavit a statement of its costs, expenses, and reasonable counsel fees, for consideration by this Court as to whether they shall be awarded under the contract terms." (ECF No. 10.) Plaintiff filed its fee petition on March 31, 2011 (ECF No. 15); the court initially denied the petition without prejudice for failure to comply with the Local Rules. (ECF No. 20.) Plaintiff was permitted to "refile a motion requesting attorneys' fees and costs . . . which must comply with the requirements of Local Rule 109 and Appendix B." (Id.)

Plaintiff filed the instant motion on July 25, 2011 (ECF No. 21) and its supporting affidavit on July 26, 2011. (ECF Nos. 23.) The motion was referred to the undersigned for a Report and Recommendation on July 29, 2011. (ECF No. 25.) Defendant has not filed a response to plaintiff's motion.[1] Upon its initial review of plaintiff's motion, the undersigned

---

[1] By two separate Orders, the court directed Mr. Leary to advise the court as to whether, among other things, he intended to challenge plaintiff's request for attorneys' fees. (ECF Nos. 17, 19.) To date, however, Mr. Leary has not responded to the court's inquiries.

determined that supplemental briefing was necessary. Accordingly, on September 16, 2011, the undersigned ordered plaintiff to file an affidavit by September 23, 2011, "detailing the work performed by the Trinidadian law firms, broken down by hours or fractions thereof expended on each task, an hourly rate for each attorney performing such work, and the number of years each attorney has been in practice." (ECF No. 26.) Plaintiff did not submit the requested affidavit or respond to the undersigned's inquiry within the time frame set by the court. Accordingly, on September 30, 2011, the undersigned ordered plaintiff to provide the requested affidavit by October 5, 2011. (ECF No. 27.) On October 4, 2011, plaintiff responded to the undersigned's Order dated September 30, 2011, and stated that it was "unable to access any responsive time records" of Trinidadian counsel. (ECF No. 28.) Plaintiff reiterated the claim made in its motion that it is "apparently the standard in Trinidad to supply flat billing," but submitted no supporting evidence as to this fact. (Id.) Nor did plaintiff supply information regarding the experience of the Trinidadian attorneys who performed the work in this matter. (Id.)

Plaintiff asks the court to award it "reasonable counsel fees, costs, and expenses," arguing that an award of attorneys' fees is mandatory under the contract terms and that attorneys' fees are recoverable as costs pursuant to Federal Rule of Civil Procedure 54(d) ("Rule 54(d)"). (ECF No. 21-2 at 2-3.) Plaintiff requests $47,350.82 in legal fees paid to various law firms.[2] (ECF No. 23-3.) Plaintiff also requests litigation costs, or "disbursements," totaling $2118.89. (ECF No. 23-3.) Finally, plaintiff requests reimbursement for costs other than attorneys' fees incurred during recovery of the vessel, including, among other costs, travel expenses and crew costs for the boat. (ECF Nos. 21-2, 23.) The undersigned will address each of plaintiff's requests separately.

---

[2] Plaintiff's motion requests $47,350.82 in total fees, but the total sum of the individual fees requested for each timekeeper, as discussed herein, is $46,704.24.

## II.  **DISCUSSION**

### A.  **Reasonable Attorneys' Fees**

Plaintiff seeks recovery of its attorneys' fees pursuant to the Agreement between plaintiff and defendant.[3]  Because this is a diversity case, "state law governs not only the actual awarding of attorneys' fees but also the method of determining those fees." Kiddie Academy Domestic Franchising, LLC v. Faith Enters. DC, LLC, 2010 WL 673112, at *7 (D. Md. Feb. 22, 2010) (quoting Dunkin' Donuts Inc. v. Guang Chyi Liu, 2002 WL 31375509, at *2 (E.D. Pa. Oct. 17, 2002).  Parties may contract to permit recovery of attorneys' fees, and a federal court will enforce those contractual rights if the contract is valid under applicable state law.  Dunkin' Donuts, 2002 WL 31375509, at *2; Kucel v. Walter E. Heller Co., 813 F.2d 67, 73 (5th Cir. 1987).  Here, clearly the plain language of the parties' Agreement provides for the award of reasonable attorneys' fees[4] and declares that the law of the State of Maryland shall govern the contract's interpretation and construction.[5]  The Agreement provides:

---

[3] Plaintiff claims it is entitled to such fees pursuant to the fee shifting provision in the parties' Agreement.  (ECF No. 21-2 at 2.)

[4] Here, because the parties' contract clearly provides for an award of reasonable attorneys' fees, the undersigned will not fully discuss plaintiff's alternative argument for an award of attorneys' fees as costs pursuant to Rule 54(d).  (ECF Nos. 21, 21-2 at 3-4.)  It must be noted, however, that the concept of costs recoverable under Rule 54(d) is generally understood to be limited to litigation costs enumerated in 28 U.S.C. §1920, absent contractual or statutory authority to the contrary.  See Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 445 (1987).  Plaintiff's reliance on Johnson & Towers Balt., Inc. v. Vessel Hunter, 802 F. Supp. 1343 (D. Md. 1992) to support its claim for recovery of attorneys' fees as costs pursuant to Rule 54(d) is unavailing.  (ECF No. 21-2 at 2-3.)  Because the court in Johnson relied on the language in the contract, rather than Rule 54(d), to award attorneys' fees, the decision does not support an award of attorneys' fees as "costs" as plaintiff suggests.  See  Johnson, 802 F. Supp. at 1346-48.

[5] Paragraph 16 of the parties' Agreement provides that the law of the state of the buyer's broker's principal office shall govern the contract's interpretation and construction.  (ECF No. 21-3 at 6 ¶ 16.)  The buyer's broker, Classic Yacht Documentation, Inc., d/b/a/ Atlantic Yacht Documentation, is located in Annapolis, Maryland.

DISPUTES: Any dispute, controversy or claim relating to the Agreement, including but not limited to the interpretation thereof, or its breach or existence, which cannot be resolved amicably by the BUYER and SELLER shall be adjudicated in a court in the State of Maryland. **The Court shall, in its awards, fix and award the costs and reasonable attorney's fees to the prevailing party of the action.** The award may be enforced by any court having jurisdiction over the party against which the award has been rendered or where assets of the party against which the award has been rendered can be located. The BUYER and SELLER further understand and agree that the chosen authority shall be the sole and exclusive forum for resolving any dispute, controversy or claim relating to this Agreement and that neither party shall resort to any other authority except to compel the affected party to act in accordance with the provisions of this agreement, refer questions of law or to confirm, vacate or modify any such award.

(emphasis added).   (ECF No. 21-3 at 5-6.)

Generally, contract provisions providing for awards of attorneys' fees to the prevailing party in litigation relating to the contract are valid and enforceable in Maryland. Myers v. Kayhoe, 391 Md. 188, 207, 892 A.2d 520, 531 (Md. 2006). The court must examine a party's fee request for reasonableness, even absent a contract provision requiring that fees be reasonable. Atlantic Contracting & Material Co., Inc. v. Ulico Cas. Co., 380 Md. 285, 316, 844 A.2d 460, 478 (Md. 2004). "The reasonableness of attorneys' fees is generally a factual determination within the sound discretion of the trial judge."[6] Id. at 316, 844 A.2d at 478. The burden is on the moving party to prove that its fees are reasonable by providing specific evidence detailing the "services performed, by whom they were provided, the time expended, and the hourly rates charged." Rauch v. McCall, 134 Md. App. 624, 638, 761 A.2d 76, 84 (Md. App. 2000).

---

[6] Although determination of the reasonableness of attorneys' fees is left to the discretion of the trial court, where an enforceable contract explicitly states the prevailing party "shall" or "must" be entitled to receive such fees, the trial court does not have the discretion to refuse to award fees altogether. See Myers, 391 Md. at 207, 892 A.2d at 531 (trial court erred by failing to award prevailing party any reasonable attorneys' fees where they were "plainly" provided for in the parties' agreement). Accordingly, because the court granted plaintiff's motion for summary judgment (ECF No. 10), plaintiff is the prevailing party in this action, and, therefore, is entitled to recover its reasonable attorneys' fees pursuant to the Agreement. See Myers, 391 Md. at 207, 892 A.2d at 531.

"Without such records, the reasonableness, vel non, of the fees can be determined only by conjecture or opinion of the attorney seeking the fees and would therefore not be supported by competent evidence." Id. at 639, 761 A.2d at 85.

Generally, the court must first utilize the "lodestar approach – determining the number of hours reasonably expended on the litigation, then multiplying those hours by a reasonable hourly rate." Stevenson v. Branch Banking & Trust Corp., 159 Md. App. 620, 665, 861 A.2d 735, 761 (Md. Ct. Spec. App. 2004). This creates an objective basis for an estimate of the value of services provided by counsel. Id. After calculating the lodestar figure, courts in this district sitting in diversity apply the following factors to assess the reasonableness of the requested rates and hours ("Maryland factors"):

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

See Kiddie Academy, 2010 WL 673112, at *7 (citing Stevenson, 159 Md. App. at 666, 881 A.2d at 762). Courts may increase or decrease the lodestar figure after considering these Maryland factors, as well as the "Johnson factors" used by federal and state courts to evaluate the reasonableness of requested fees.[7]

---

[7] The Maryland factors are very similar to the "Johnson factors" first articulated by the Fifth Circuit in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) and subsequently adopted by the Fourth Circuit in Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978). Indeed, federal courts sitting in diversity and Maryland courts look to the Johnson factors when assessing the reasonableness of requested attorneys' fees. See, e.g., Gonzalez v. Caron, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011) (federal court applying Johnson factors to determine reasonableness of requested hours and rates); Friolo v. Frankel

1. **Reasonable Hourly Rate**

Plaintiff seeks attorneys' fees for work performed by nine attorneys[8] and three paralegals at various hourly rates at four different firms: (1) Moore & Company; (2) Lochner Law Firm, P.C.; (3) A.C.O. Cherry & Co.; and (4) N.D. Alfonso & Company. (ECF Nos. 21-2, 23.) In considering a motion for attorneys' fees, the burden rests with the fee applicant to establish the reasonableness of the requested hourly rate. CoStar Group., Inc., et al. v. Loopnet, Inc., 106 F. Supp. 2d 780, 787 (D. Md. 2000). To "inform and assist the court in the exercise of its discretion," the fee applicant must produce:

> satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.

Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984). An hourly rate determined in this way is referred to as the "prevailing market rate," and evidence usually takes the form of affidavits from other counsel attesting to their rates or the prevailing market rate. CoStar, 106 F. Supp. 2d at 788 (emphasis added). Where the plaintiff produces sufficient evidence to establish that the hourly

---

(Friolo II), 403 Md. 443, 454 n.8, 942 A.2d 1242, 1248 (Md. 2008) (Maryland court applying Johnson factors to analysis of whether requested attorneys' fees were reasonable and directing trial court to "be mindful" of Maryland factors). The Johnson factors are as follows:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Johnson, 488 F.2d at 717-19.

[8] Although plaintiff does not specify, this court assumes it requests fees for work performed by one attorney at A.C.O. Cherry & Co.

rates sought for plaintiff's attorneys coincide with the then prevailing market rate, such rates are normally deemed reasonable by the court.  Id.

Although affidavits from other counsel are the preferred form of evidence, in the absence of sufficient documentation, the court may rely on its own knowledge of the market to determine the prevailing market rate.  CoStar, 106 F. Supp. 2d at 788.  Appendix B to this Court's Local Rules, captioned "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases" ("Guidelines"), provides this "market knowledge" to courts in this district.  Gonzalez, 2011 WL 3886979, at *2.  Although these Guidelines "are neither binding nor definitive," Thomas v. Smith, Dean & Associates, Inc., 2011 WL 3567043, at *2 (D. Md. Aug. 10, 2011),  they provide a presumptively reasonable sliding scale of rates based upon the number of years an attorney has been admitted to the bar.  Loc. R. App. B. § 3; Gonzales, 2011 WL 3886979, at *2 ("While the Guidelines are not binding, generally this Court presumes that a rate is reasonable if it falls within these ranges.").  With these guidelines in mind, the undersigned will address the reasonableness of the hourly rates sought by plaintiff.

### a.  Moore & Company and Lochner Law Firm, P.C.

Plaintiff seeks reimbursement for work performed by five timekeepers at Moore & Company, a Florida law firm specializing in maritime and admiralty law, and five timekeepers at Lochner Law Firm, P.C., a Maryland law firm specializing in admiralty law.  In support of its claim for attorneys' fees for work performed by the Florida and Maryland firms, plaintiff offers: (1) a memorandum setting forth the nature of the case, including a statement from Maryland counsel Todd D. Lochner that the fees charged by Moore & Company are "customary fee[s] prevailing in the community" and that Lochner Law Firm, P.C. charged a "below market fee" (ECF No. 21-2); (2) time records and invoices from the Florida and Maryland firms, which describe the work performed broken down by time expended on each task, and list a requested

hourly rate of reimbursement for work performed[9] (ECF Nos. 23-3, 23-4); and (3) affidavits of Mr. Michael Moore, counsel at Moore & Company, and Mr. Todd D. Lochner, counsel at Lochner Law Firm, P.C., averring that the invoices submitted are a true and correct copy of the billing statements issued by the Florida and Maryland firms. (ECF No. 23-4 at 20, 46.)

The Local Rules of this court set forth the following presumptively reasonable Guidelines regarding hourly rates:

(a) Lawyers admitted to the bar for less than five (5) years: $150-190.
(b) Lawyers admitted to the bar for five to eight years: $165-250.
(c) Lawyers admitted to the bar for nine to fourteen years: $225-300.
(d) Lawyers admitted to the bar for fifteen years or more: $275-400.
(e) Paralegals and law clerks: $95-115.

Loc. R. App. B. § 3. The following discussion compares the hourly rates sought by plaintiff with the rates set forth in this court's Guidelines.

First, with respect to the hourly rates charged by timekeepers at Moore and Company, it should be noted that one timekeeper, Blair Brogan, billed plaintiff at an hourly rate within the Guidelines' presumptively reasonable range for an attorney with her experience. Ms. Brogan has been practicing for one year and billed plaintiff at a $167.55 hourly rate. This rate is within the $150-190 hourly fee range suggested by the Guidelines for an attorney admitted to the bar for less than five years. See Loc. R. App. B. § 3. One other timekeeper for Moore & Company, John Curtis, billed plaintiff at an hourly rate within the presumptively reasonable hourly fee range set forth in this court's Guidelines, but the hourly rate charged is higher in the range than warranted by his experience. Mr. Curtis has been admitted to practice for five years and charges $239.36 per hour. This hourly rate is near the top of the $165-250 fee range set forth in the

---

[9] Plaintiff's filings comply with this court's Local Rules. See Loc. R. 109.2(b); Loc. R. App. B § 1.

Guidelines for an attorney practicing for five to eight years.  See Loc. R. App. B. § 3.  Finally,

three of the timekeepers for Moore & Company billed plaintiff at hourly rates that exceed the

amount recommended in the Guidelines:  (1) Michael Moore is a partner who has been

practicing for 36 years and charges $508.65 per hour, well in excess of the $275-400 fee range

set forth in the Guidelines for an attorney with his experience, see Loc. R. App. B. § 3; (2) Erin

Ackor has been admitted to practice for eight years and her hourly rate is $299.20, also in excess

of the $165-250 fee range recommended in the Guidelines for an attorney with her experience,

see Loc. R. App. B. § 3; (3) Jessica Elliott is a paralegal with 11 years of experience and her

hourly rate is $125.25, in excess of the $95-115 reasonable fee range for paralegals and law

clerks. [10]  See Loc. R. App. B. § 3.

With respect to Lochner Law Firm, P.C., two of the timekeepers billed plaintiff at hourly

rates within the Guidelines' presumptively reasonable ranges:  (1) John Sweeney has been

practicing for 16 years and billed plaintiff at an hourly rate of $300, see Loc. R. App. B. § 3; (2)

Eugene Samarin, a paralegal, billed plaintiff at an hourly rate of $70.  See Loc. R. App. B. § 3.

The Maryland firm's three other timekeepers billed plaintiff at hourly rates that exceed those

recommended by the Guidelines:  (1) Todd D. Lochner, a partner with thirteen years of

experience, billed plaintiff at a rate of $350 per hour, a rate in excess of the Guidelines' range of

$225-300 for an attorney admitted to practice for nine to fourteen years, see Loc. R. App. B. § 3;

(2) Lance Young, an associate admitted to practice for five years, billed plaintiff at a rate of $300

per hour, which exceeds the $165-250 fee range set by the Guidelines for an attorney with his

experience, see Loc. R. App. B. § 3; (3) Josh Parks, a law clerk/paralegal, billed plaintiff at a rate

of $150 per hour, which exceeds the $95-115 fee range set by the Guidelines for such firm

---

[10] Although plaintiff does not specify, it appears that Ms. Elliott is a paralegal, based on
her hourly rate.

employees.  See Loc. R. App. B. § 3.

The "locality rule" governing attorneys' fee awards in this district provides that the "community in which the court sits is the first place to look to in evaluating the prevailing market rate."  Thompson v. U.S. Dept. of Hous. & Urban Dev., 2002 WL 31777631, at *12 (D. Md. Nov. 21, 2002) (citing Montcalm Pub. Corp. v. Virginia, 199 F.3d 168, 173 (4th Cir. 1999)). If the plaintiff demonstrates, however, that a "matter is so complex or specialized that 'no attorney, with the required skills, is available locally,' a court may, of course, award fees for counsel located elsewhere."  Id.

With respect to the fees sought for the Florida firm, plaintiff has not produced any evidence as to its inability to secure local counsel, or other evidence, so as to justify an upward departure from the fee range suggested in the Guidelines for work performed by the Florida firm. See Thompson, 2002 WL 31777631, at *12-13 (awarding fees at Washington, D.C. market rates where plaintiff submitted extensive evidence that it undertook reasonable efforts to locate Maryland firm, was unsuccessful in such undertaking, and, therefore, turned to Washington, D.C. firm for representation).  Moreover, even if the undersigned were inclined to award attorneys' fees at Florida rates, plaintiff has not submitted any affidavits attesting to the customary fee charged by maritime lawyers in Florida, and the affidavit of Florida counsel, Mr. Moore, does not address the customary hourly rates.[11]  (ECF No. 23 Ex. D, at 20.)

---

[11] Plaintiff's Maryland counsel notes that the fees charged by Moore & Company are the customary fee for like work charged because "[t]he fees stated herein are similar to those which the undersigned has experienced when engaging local counsel amongst the Florida admiralty bar."  (ECF No. 21-2 at 4.)  The undersigned does not find this assertion sufficient to support a departure from the Guidelines.  Although this court could consider other supporting evidence for plaintiff's assertion, such as affidavits from Florida admiralty counsel averring to the prevailing market rate in the community, plaintiff has not produced such evidence in this case.  See Poole ex rel. Elliott v. Textron, Inc., 192 F.R.D. 494, 509-10 (D. Md. 2000) (as part of its reasonableness inquiry, the court may also consider "affidavits of lawyers in the [relevant] legal

Accordingly, the undersigned concludes that an award of attorneys' fees at hourly rates in excess of those recommended by the Guidelines is not warranted for work performed by the Florida firm.

Nor has plaintiff submitted sufficient evidence to support an upward departure from the Guidelines for work performed by Lochner Law Firm, P.C. Plaintiff's Maryland counsel claims that "the customary fee prevailing in the [Maryland] community amongst local admiralty lawyers with similar levels of experience as the undersigned is $400-475 an hour," and that Lochner Law Firm, P.C. charged plaintiff a "below market fee." (ECF No. 21-2 at 4.) Plaintiff presents no other evidence to substantiate this claim, however, such as affidavits from other Maryland admiralty lawyers discussing the customary market rate. See Poole, 192 F.R.D. at 509-10. Accordingly, the undersigned finds that an award of attorneys' fees at hourly rates exceeding the Guidelines' recommended ranges is not warranted for work performed by the Maryland firm.

The undersigned has also reviewed both the Maryland factors and the Johnson factors, and finds that none of the factors support an upward departure from the rates suggested in the Guidelines for work performed by either Moore & Company or Lochner Law Firm, P.C. The only reason advanced by plaintiff to justify a higher hourly rate is that counsel are experts in the field of admiralty law. (ECF No. 21-2 at 5.) Although an upward departure might be justified by counsel's extensive experience and knowledge of admiralty law, plaintiff has not established that this matter was so complex, or premised upon admiralty law, as to require such expertise. Although plaintiff claims that "the allegations of superior claims to title . . . as well as the seizure of the vessel in a foreign jurisdiction, bring this case squarely into the admiralty sphere" (ECF

_____

community attesting to the customary rates charged [for similar matters]."). Moreover, as discussed below, plaintiff has not established that the expertise of an admiralty attorney was necessary in this case.

No. 21-2 at 5), the undersigned concludes that this matter, as presented and litigated by plaintiff in this court, is a breach of contract case. (ECF No. 1.) As a relatively straightforward contract dispute, this matter does not present novel or difficult issues requiring specialized litigation skill. Accordingly, although the undersigned recognizes Mr. Moore's and Mr. Lochner's status as Proctors in admiralty and their many years of practice, as well as the admiralty expertise of some of the other timekeepers, neither that status nor their expertise supports an award of fees above the Guidelines' suggested hourly rates, or in excess of where the attorneys are positioned in their respective ranges based on their years of practice.[12] Plaintiff has not offered any other basis to deviate from the fee ranges set forth in this court's Local Rules.

In sum, because none of the Johnson or Maryland factors support a deviation from the presumptively reasonable guidelines set forth in this court's Local Rules, the undersigned respectfully recommends that the hourly rates of the timekeepers at the Florida and Maryland firms, based on their number of years of practice and where they fall in the range recommended by the Guidelines, be set as follows:

---

[12] The court in Kiddie Academy reached a similar result in a breach of contract action. Plaintiffs sought to recover attorneys' fees for partners with 20-plus and 30-plus years of experience at hourly rates of $495 and $525, respectively. The court refused to award fees above the maximum amount suggested by the guidelines and awarded fees at an hourly rate of $400 for work performed by both partners. 2010 WL 673112, at *9. In doing so, the court observed:

> [Plaintiff] has requested hourly rates far in excess of those suggested by the Local Rules. This upward departure is not justified by the novelty or difficulty of this case – a relatively routine contract dispute – and no special skill was required to litigate it. . . . This court acknowledges the superior experience of [counsel] and their many years of practice, but these do not justify fees above the suggested range.

Id.

a.   Moore & Company (Florida firm)[13]

1.   $400 for Mr. Moore, practicing for 36 years ($508.65 requested).

2.   $250 for Ms. Ackor, practicing for 8 years ($299.20 requested).

3.   $190 for Mr. Curtis, practicing for 5 years ($239.36 requested).

4.   $167.55 for Ms. Brogan, practicing for 1 year ($167.55 requested).

5.   $105 for Ms. Elliott, paralegal ($125.25 requested).

b.   Lochner Law Firm, P.C. (Maryland firm)

1.   $290 for Mr. Lochner, practicing for 13 years ($350 requested).

2.   $190 for Mr. Young, practicing for 5 years ($300 requested).

3.   $300 for Mr. Sweeney, practicing for 16 years ($300 requested).

4.   $105 for Mr. Parks, law clerk/paralegal[14] ($150 requested).

5.   $70 for Mr. Samarin, paralegal ($70 requested).

### b.   **A.C.O. Cherry & Company and N.D. Alfonso & Company**

Plaintiff also seeks reimbursement for attorneys' fees paid to two Trinidadian law firms:

(1) $500 paid to A.C.O. Cherry & Company to consider plaintiff's file and provide advice (ECF Nos. 21-2 at 2, 23-3 at 2); and (2) $12,000,000 paid to one attorney at N.D. Alfonso & Company, Nyree Alfonso, to prepare court documents, appear on plaintiff's behalf, and provide general care, conduct, and advice.  (ECF Nos. 21-2 at 2, 23-3 at 2.)  In support of its claim, plaintiff filed:  (1) a memorandum setting forth the nature of the case, including a statement from Maryland counsel that the fees charged by the Trinidadian law firms are "customary fee[s]

---

[13] The hourly rates plaintiff requests are set forth in the parentheticals accompanying the undersigned's recommended hourly rate for each timekeeper.  (ECF No. 23-3.)

[14] Plaintiff's motion does not set forth the number of years of experience of Mr. Parks or Mr. Samarin.  (ECF No. 23-3.)

prevailing in the community" (ECF No. 21-2); and (2) time records and invoices from the Trinidad firms which list flat fees charged by the law firms and describe the work performed. (ECF Nos. 23-3, 23-4.) These records do not provide any detail regarding hourly rates or time expended on each task as required by this court's Local Rules. See Loc. R. 109.2(b); Loc. R. App. B § 1. (ECF Nos. 23-3, 23-4.) Rather, plaintiff merely asserts that the fees requested by both firms "appear to be similar for the amount of efforts expended," and that, "given the relatively small number of attorneys in Trinidad, comparing the two is a reasonably accurate read of the customary fee prevailing in the community." (ECF No. 21-2 at 4.)

Here, plaintiff has failed to prove that flat billing is the prevailing market rate, and, therefore, the presumptively reasonable rate, in the Trinidadian legal market. Plaintiff claims that flat billing is "apparently the standard" in Trinidad, but submits no evidence in support of this assertion. (ECF No. 21-2, at 4.) As noted above, the undersigned requested supplemental briefing as to the work performed by the Trinidadian law firms, as well as the prevailing market rates in Trinidad for such work, but plaintiff failed to produce any of the requested information. (ECF Nos. 26, 27, 28.) The undersigned's market knowledge does not extend to the Trinidad legal market, and, without specific evidence as to the prevailing market rate, the undersigned is unable to assess the reasonableness of the attorneys' fees requested by plaintiff. While the court may also consider "affidavits of lawyers in the [relevant] legal community attesting to the customary rates charged for [similar matters]," Poole, 192 F.R.D. at 509-10, plaintiff has not submitted any such affidavits as to the rates charged by the Trinidadian law firms in this case.

Without the information requested from plaintiff (ECF Nos. 26, 27), the undersigned is unable to determine whether the flat fees charged by the two Trinidadian law firms are reasonable. In the absence of evidence detailing the work performed (broken down by hours or

fractions thereof) or explaining the prevailing market rate in Trinidad, the undersigned is unable to calculate a lodestar figure for the work performed by the Trinidadian law firms. See Costar, 106 F. Supp. 2d at 787-88 (affidavits of other lawyers in relevant community attesting to prevailing market rate acceptable evidence to establish reasonable hourly billing rate necessary for lodestar calculation). Accordingly, because plaintiff has not met its burden of proving that the fees billed by the two Trinidadian law firms is reasonable, the undersigned respectfully recommends that plaintiff's request for reimbursement of attorneys' fees paid to the two Trinidadian law firms be denied.

### 2. Reasonable Hours Expended

As noted above, plaintiff seeks attorneys' fees for hours expended by four different law firms it retained in the instant case. First, plaintiff hired the Trinidadian firm A.C.O. Cherry & Co. (ECF No. 21-2 at 2.) After A.C.O. Cherry & Co. determined it had a conflict, plaintiff retained a second firm in Trinidad, N.D. Alfonso & Company. (Id.) According to plaintiff, when these firms were not effective and Mr. Leary, the principal of defendant, "made his presence in Florida known," plaintiff retained the Florida admiralty firm, Moore & Company. (ECF No. 21-2 at 2.) Moore & Company spoke with Trinidadian counsel and led discussions between the parties to facilitate a settlement. (ECF Nos. 21-2 at 2, 23-3 at 2-4.) When the parties were unable to reach a resolution, Moore & Company referred the case to the Maryland admiralty firm, Lochner Law Firm, P.C., to bring suit in Maryland in accordance with the terms of the Agreement. (ECF No. 21-2 at 2.)

The party moving for attorneys' fees bears the burden of "proving hours to the district court by submitting contemporaneous time records that reveal all hours for which compensation is requested and how those hours were allotted to specific tasks." CoStar, 106 F. Supp. 2d at 788

(citations omitted).  After reviewing the billing records submitted, the court must ensure that counsel has exercised "billing judgment," that is, that counsel made a "good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. . . ." Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)); see also Xiao-Yue Gu v. Hughes STX Corp., 127 F. Supp. 2d 751, 765 (D. Md. 2001) (courts should review fee petitions just as a cost-conscious client would, calling into question any entries that appear duplicative, inefficient, or unnecessary).  The court may take reductions from the lodestar figure for a variety of reasons, including inadequate documentation of hours and work that is duplicative, excessive, unnecessary, or unsuccessful. See CoStar, 106 F. Supp. 2d at 789; Stevenson, 159 Md. App. at 665, 881 A.2d at 761.

In order to justify the hours billed in this case, plaintiff submitted time records and invoices for all four law firms it retained.  (ECF Nos. 23-3, 23-4.)  As discussed above, plaintiff's documentation as to the Trinidad law firms describes the work performed, but does not reveal the number of hours for which plaintiff requests compensation or state how those hours were allotted to specific tasks.  (ECF No. 23-3.)  Plaintiff's records as to the Florida and Maryland law firms, however, do detail the individual tasks for which plaintiff requests reimbursement and reveal the number of hours allotted to each task in accordance with this court's Local Rules.  See Loc. R. 109.2(c), App. B. (ECF No. 23-3.)  By adding up the number of hours allotted to each task, the undersigned determined that Moore & Company expended 60.17 hours and Lochner Law Firm, P.C. expended 73.8 hours, resulting in a combined total of 133.97 hours.[15]

---

[15] Although plaintiff's billing records detail the individual tasks for which plaintiff requests reimbursement, as well as the number of hours allotted to each task, they do not provide

18

As to the time records submitted by plaintiff for the Florida firm, they reflect that plaintiff was billed for a total of 60.17 hours for tasks in the "case development" phase of the proceedings that included: (1) engaging in communications with plaintiff, defendant, and the broker; (2) discussing plaintiff's case with plaintiff's Trinidadian counsel; (3) preparing correspondence to parties involved; (4) reviewing documents; and (5) facilitating communications between the respective parties. (ECF No. 23-3.) Although plaintiff's records include numerous entries for communications with the broker and the seller and communications with plaintiff, the undersigned finds that these communications, spread over a period of four months, are reasonable and not duplicative in light of the Florida firm's continued attempts to help the parties resolve their dispute short of full litigation.[16] (ECF Nos. 21-2, 23-4.) The undersigned has conducted a thorough review of the Florida firm's bills, and concludes that counsel exercised "billing judgment," and that the hours expended by the Florida firm are reasonable. (ECF Nos. 23-3, 23-4.) CoStar, 106 F. Supp. 2d at 789 ("[B]illing judgment consists of winnowing the hours actually expended down to the hours reasonably expended. Time that is 'excessive, redundant, or otherwise unnecessary' should be excluded.") (quoting Hensley, 461 U.S. at 434). Consequently, there is no need to exclude any hours charged by the Florida firm from plaintiff's fee award as excessive, redundant, or unnecessary. Accordingly, the undersigned respectfully recommends that the 60.17 hours billed by the Florida firm be awarded at the reasonable hourly rates discussed above.

---

this court with a total sum of requested hours. (ECF No. 23-3.) This court calculated the total sum of requested hours by adding up the hours allotted to each individual task. (ECF No. 23-3.)

[16] It should be noted that the undersigned's recommendation that plaintiff's motion for fees charged by the Trinidad firms be denied, as discussed above, eliminates any potential duplication in plaintiff's fee award as to discussions between the Florida firm and Trinidadian counsel.

Turning to the time records submitted by plaintiff for the work performed by the Maryland firm, Lochner Law Firm, P.C., they reflect that plaintiff was billed a total of 73.8 hours for tasks including: (1) drafting the Complaint in this case; (2) corresponding with plaintiff and defendant; (3) communicating with Mr. Moore, Florida counsel; and (4) preparing motions for summary judgment, entry of default, and the instant motion for attorneys' fees and costs. (ECF No. 23-3.) As discussed above, a court must review a plaintiff's billing records to ensure that counsel has exercised "billing judgment," and has not included hours that are "excessive, redundant, or otherwise unnecessary" in plaintiff's fee petition. CoStar, 106 F. Supp. 2d at 788.

Here, the undersigned conducted a detailed review of the Maryland firm's billing records. First, it should be noted that, although there is minimal overlap in the work performed by Florida counsel and Maryland counsel, such overlap was reasonable to allow for the smooth transition of representation from the Florida firm to the Maryland firm. After that transition, the Maryland firm was solely responsible for litigating this case. Specifically, the work performed included drafting and filing: (1) the Complaint; (2) the motion for summary judgment (which this court granted on February 25, 2011); (3) the motion for entry of default against defendant (which the clerk entered against defendant on March 2, 2011); (4) the instant motion for attorneys' fees and costs; and (5) the motion for judgment by default. The billing records submitted by the Maryland firm clearly detail that the hours expended by the Maryland firm for each of these tasks were reasonable and those hours are adequately documented in plaintiff's submission. Accordingly, the undersigned finds that a reduction in hours as to the work performed by the Maryland firm is not warranted, as the hours expended are not "excessive, redundant, or otherwise unnecessary." CoStar, 106 F. Supp. 2d at 788-89. Therefore, the

undersigned respectfully recommends that the 73.8 hours billed by the Maryland firm be awarded at the hourly rates discussed above.

In sum, the undersigned concludes that the Florida and Maryland firms devoted a reasonable number of hours to the tasks performed, and, therefore, recommends that the fees for the 133.97 hours charged by these firms at the reasonable hourly rates for each timekeeper should be awarded. As discussed above, plaintiff has not provided the information requested by the undersigned with respect to the Trinidadian firms, and the undersigned is unable to assess the reasonableness of the hours expended by those firms. Accordingly, the undersigned respectfully recommends that plaintiff's request for recovery of fees charged by Trinidadian counsel be denied. See Hensley, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly."); CoStar, 106 F. Supp. 2d at 789 ("Litigants take their chances by submitting fee applications that are too vague to permit the district court to determine whether the hours claimed were reasonably spent.") (quoting League of United Latin Am. Citizens v. Roxcoe Indep. Sch. Dist., 119 F.3d 1228, 1233 (5th Cir. 1997)). Based upon these conclusions, the undersigned turns to a calculation of the lodestar amount.

3. **Lodestar Calculation**

Based upon the foregoing analysis as to reasonable hourly rates and hours expended, the undersigned respectfully recommends that plaintiff be awarded attorneys' fees totaling **$29,213.43**, calculated as follows:

| Firm | Attorney/ Employee | Requested Hourly Rate | Recommended Hourly Rate | Requested Hours | Recommended Hours | Requested Fees | Recommended Fees |
|------|------|------|------|------|------|------|------|
| A.C.O. Cherry & CO. | | | | | | | |
| | No documentation provided. | Flat Rate - $500 | None proved. | None provided. | 0 | $500 | $0.00 |
| N.D. Alfonso & Company | | | | | | | |
| | Nyree D. Alfonso | Flat Rate - $12,000 | None proved. | None provided. | 0 | $12,000 | $0.00 |
| Moore & Company | | | | | | | |
| | Michael T. Moore | $508.65 | $400 | 11.1 | 11.1 | $5493.44 | $4440.00 |
| | Erin Ackor | $299.20 | $250 | 1.90 | 1.90 | $568.48 | $475.00 |
| | John Curtis | $239.36 | $190 | 34.12 | 34.12 | $8149.05 | $6482.80 |
| | Blair Brogan | $167.55 | $167.55 | 12.5 | 12.5 | $2094.38 | $2094.38 |
| | Jessica Elliott, Paralegal | $125.25 | $105 | .55 | .55 | $68.69 | $57.75 |
| Lochner Law Firm, P.C. | | | | | | | |
| | Todd. D. Lochner | $350 | $290 | 32.4 | 32.4 | $10,168.20 | $9396.00 |
| | Lance Young | $300 | $190 | 14.7 | 14.7 | $3830.00 | $2793.00 |
| | John Sweeney | $300 | $300 | 6.6 | 6.6 | $1980.00 | $1980.00 |
| | Josh Parks, Law Clerk/Paralegal | $150 | $105 | 2.5 | 2.5 | $375.00 | $262.50 |
| | Eugene Samarin, Paralegal | $70 | $70 | 17.6 | 17.6 | $1477.00 | $1232.00 |
| **TOTAL** | | | | | | $46,704.24 | **$29,213.43** |

## B. Reasonable Litigation Costs

Plaintiff seeks an award of $2118.59 in litigation costs, which it labels "disbursements." (ECF No. 23-3.)  In addition to attorneys' fees, the court may also award "reasonable out-of-pocket" litigation expenses that are properly documented and are not excessive.  See Loc. R. App. B § 4(a); CoStar, 106 F. Supp. 2d at 788.  Here, plaintiff has submitted billing records that itemize costs and are divided by litigation phase in accordance with this court's Local Rules. See Loc. R. 109.2(b). Plaintiff's requested costs in the "case development, background investigation and case administration" phase, totaling $1,560.45, include: (1) $150 for preparation of court brief; (2) $790 for filing fees, photocopies, commissioner of affidavit fees, service fees, and overseas telephone calls; (3) $119.76 for four Federal Express invoices; (4) $201 for photocopies; (5) $269.69 for four finance charges; and (6) $30 paid to the Delaware Secretary of State for defendant's 2008 Annual Report.  (ECF No. 23-3 at 6-7.)  Plaintiff also requests the following litigation costs for the "pleadings" phase of litigation, totaling $542.78: (1) $4.99 for an "Intellius Search for [Mr.] Leary;" (2) $350 filing fee for the Complaint in this case; (3) $175 paid to the process server; and (4) $12.79 for photocopies.  (ECF No. 23-3 at 14.) Finally, plaintiff requests reimbursement for litigation costs incurred in the instant fee petition: $15.36 for photocopies.  (ECF No. 23-3 at 25.)

The undersigned has carefully reviewed plaintiff's itemization of disbursements and request for reimbursement of these litigation costs.  Based upon that review, the undersigned concludes the costs sought by plaintiff, with one exception,[17] are not excessive, were reasonably incurred, and are properly documented in plaintiff's fee petition.  (ECF No. 23-3.)  See CoStar,

---

[17] Plaintiff seeks a total of $269.69 for four "finance charges" without further explanation.  (ECF No. 23-3 at 7.)  The undersigned cannot even speculate as to the nature of those "finance charges," and, accordingly, concludes that the "finance charges" plaintiff requests are not properly documented, and should not be awarded.

106 F. Supp. 2d at 790 (court awarded properly documented and reasonable costs, including lodging, car rental, and court reporting fees incurred as direct result of counsel's actions at deposition but found $465 requested for Westlaw research on motion to compel excessive and awarded modified sum of $150). Accordingly, the undersigned respectfully recommends plaintiff be awarded the total sum of its requested litigation costs, $2118.59, less the $269.69 in "finance charges," in the amount of $1848.90.

### C. **Other Expenses**

Plaintiff also seeks recovery of expenses it incurred in its efforts to take possession of the vessel and related activities. (ECF Nos. 21-2, 23.). Specifically, plaintiff requests an award of costs totaling $19,548.44 detailed as follows: (1) expenses related to the employment of the master and/or crew totaling $7,297.40; (2) travel expenses of Ms. Reisman on behalf of plaintiff totaling $1,749.34; (3) food and lodging expenses totaling $2,056.48; (4) insurance premiums totaling $2,085.00; and (5) miscellaneous communication expenses, foreign transaction fees, petty cash, and boat preparation and storage fees totaling $6,360.22. (ECF No. 23.) Plaintiff does not offer any analysis supporting the request for recovery of these particular expenses. The totality of plaintiff's argument for recovery of these extraordinary expenses is as follows:

> The nature of this case was a Declaratory Judgment and Breach of Contract claim. The Plaintiff prevailed as to both claims when this Court ordered that Plaintiff had title to the vessel and that Defendant must perform his obligations under the contract (Document 10). Having prevailed, a presumption is created under which this Court should award costs to Plaintiff. *Cantrell v. International Broth. of Elec. Workers, AFL-CIO, Local 2021*, 69 F.3d 456 (Okla.1995.) Moreover, although Plaintiff prevailed on all counts at summary judgment, Plaintiff is not necessarily required to prevail on all issues in order justify a full award of costs under the Federal Rules of Civil Procedure. In, *Thurner Heat Treating Corp. v. Mayfair Ford. Inc.*, 656 F. Supp. 1178, (E.D.Wis.1987.) "a party not need to prevail on all issues to justify a full award of costs."

(ECF No. 21-2 at 3-4 (cited as appears in plaintiff's memorandum).)

Although far from clear, plaintiff's citation to <u>Cantrell v. International Brotherhood of Electric Workers Local 2021</u>, 69 F.3d 456 (10th Cir. 1995) and <u>Thurner Heat Treating Corp. v. Mayfair Ford, Inc.</u>, 656 F. Supp. 1178 (E.D. Wis. 1987), appears to indicate that it relies on Rule 54(d), the Federal Rule of Civil Procedure at issue in those cases, to support an award of the requested expenses.  In <u>Cantrell</u>, the Tenth Circuit held that a district court had discretion to award $1250.00 in costs to union members as a "prevailing party" under Rule 54(d) when the members voluntarily dismissed their case with prejudice before trial.  69 F.3d at 458-60; <u>see also</u> <u>Thurner</u>, 656 F. Supp. at 1182 ("A party need not prevail on all issues to justify a full award of costs" pursuant to Rule 54(d).).  As noted earlier in this report and recommendation, costs recoverable under Rule 54(d) are generally understood to be limited to litigation costs enumerated in 28 U.S.C. § 1920.[18]  <u>See</u> <u>Crawford Fitting Co.</u>, 482 U.S. at 445.  Neither Rule 54(d) nor Section 1920 supports an award of the extraordinary expenses sought by plaintiff.

Nor does the contract at issue here support such an award.  The Agreement here provides that:  "[t]he Court shall, in its awards, fix and award the costs and reasonable attorney's fees to the prevailing party of the action."  (ECF No. 21-3 at 5-6.)  Maryland courts have "long adhered to the objective theory of contract interpretation," under which a court "must presume that the parties meant what they expressed" when the language of the contract is "plain and

---

[18]  The general taxation-of-costs statute provides the court may tax the following as costs:

(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (4) Docket fees under section 1923 of this title; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

unambiguous." Myers, 391 Md. at 198, 892 A.2d at 526.  Here, the plain language of the

parties' Agreement clearly provides for the award of "costs and reasonable attorney's fees."

(ECF No. 21-3 at 5-6.)  Applying the objective theory of contract interpretation, the undersigned

concludes that the "expenses" plaintiff requests do not constitute the "costs" contemplated by the

Agreement.  A reasonable person reading this language would assume that the "costs" provided

for in the Agreement are the reasonable costs incurred in litigating a dispute under the contract,

not the ancillary expenses plaintiff requests here.  The expenses sought by plaintiff are more in

the nature of consequential damages resulting from the defendant's breach of contract, not

traditional litigation costs.  Accordingly, the undersigned concludes that plaintiff cannot recover

the requested expenses under the terms of the Agreement.

Because plaintiff has not offered any legal support for an award of the expenses

requested, the undersigned conducted its own research on the issue.  Although there is some

authority for the proposition that one can recover costs and expenses ancillary to the court's

award of specific performance in a breach of contract action, those cases do not support an award

of the types of expenses sought by plaintiff here.  For example, in Miller v. Talbot, 239 Md. 382,

211 A.2d 741 (Md. 1965), the Maryland Court of Appeals noted that, if the court determines the

remedy is reasonable, "[a] claim for damages in a suit for specific performance is not necessarily

a 'contradiction' of a prayer for specific performance but, on the contrary, may be quite

compatible with it."  Id. at 392, 211 A.2d at 747.  Such awards, however, have typically been

limited to minimal out-of-pocket expenses incurred by a party ancillary to a grant of specific

performance.  See, e.g., Bernardini, et al. v. Stefanowicz Corp., et al., 29 Md. App. 508, 516, 349

A.2d 287, 292 (1976) (citing Miller, No. 10331, slip op. (Circuit Court for Carroll County Mar.

2, 1996)) (on remand, the Miller court awarded costs of $442.50 for additional moving charges

and storage of furniture and $900 for boarding dogs in a kennel incurred due to the defendant's delay in specific performance of contract for sale of country residence, but denied plaintiff's claim for rent paid to lease alternate residence); <u>Bernardini</u>, 29 Md. App. at 512-21, 349 A.2d at 289- 95 (affirming trial court's award of  stipulated "reasonable and foreseeable" out-of-pocket expenses ancillary to grant of specific performance of contract for purchase of residential lots, totaling $1571-3461 per family affected by delay in performance).

The undersigned is not persuaded that this authority lends support to plaintiff's request for the very unusual expenses in the amount of $19,548.44 sought by plaintiff.  Indeed, it should be noted that when plaintiff sought summary judgment, it requested that the court either order specific performance of the contract between plaintiff and defendant, or, alternatively, return plaintiff's $210,000 payment made under the contract.  (ECF No. 6.)  Plaintiff was awarded specific performance (ECF No. 10), and should not now be able to recover what, in essence, are consequential damages resulting from defendant's breach of contract.  In conclusion, plaintiff has not met its burden of establishing that the ancillary expenses it requests are recoverable pursuant to the Federal Rules of Civil Procedure, the Agreement, or any other theory. Accordingly, the undersigned respectfully recommends that plaintiff's request for an award of these ancillary expenses be denied.  <u>See</u>  <u>Farmer v. Arabian Am. Oil Co.</u>, 379 U.S. 227, 234 (1964) (Rule 54 does not grant district court "unrestrained discretion to reimburse the winning litigant for every expense he has seen fit to incur."); <u>Bernardini</u>, 29 Md. App. at 520, 349 A.2d at 294 (award of ancillary compensation in equity ultimately dependent on court's discretion).

### III. **CONCLUSION**

In sum, I recommend that:

1.     Plaintiff's motion for reasonable attorneys' fees and costs (ECF No. 21) be GRANTED

IN PART and DENIED IN PART.

2.     Plaintiff be awarded $29,213.43 in attorney's fees and $1848.90 in costs, for a total sum

of $31,062.33.

3.     Plaintiff's motion for expenses incurred in its efforts to take possession of the vessel and

related fees, totaling $19,548.44 for captain's expenses, travel expenses, hotel/food expenses,

insurance fees, and miscellaneous communication expenses, foreign transaction fees, petty

cash, boat preparation and storage fees (ECF Nos. 21, 23 at 1) be DENIED.


I also direct the Clerk to mail a copy of this Report and Recommendation to defendant

Polaris Investments Limited at the address listed on plaintiffs' Complaint. (ECF No. 1.)

Any objections to this Report and Recommendation must be served and filed within

fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5(b).


Date:     __11-23-11_____                    _____/s/_____
                                                Beth P. Gesner
                                                United States Magistrate Judge